**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4069-18T1

JOSEPH OSTROWSKY,

    Plaintiff-Appellant,

v.

PAMELA JENGO and
BOROUGH OF HASBROUCK
HEIGHTS,

    Defendants-Respondents.

_____

Telephonically argued February 25, 2020 -
Decided March 25, 2020

Before Judges Fasciale, Moynihan and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-1405-17.

E. Drew Britcher argued the cause for appellant (Britcher Leone, LLC, attorneys; E. Drew Britcher, of counsel; Tyrone Frederick Sergio, on the briefs).

Douglas M. Barnett argued the cause for respondent Pamela Jengo (Gregory P. Helfrich & Associates, attorneys; Douglas M. Barnett, on the brief).

David J. Ruitenberg argued the cause for respondent Borough of Hasbrouck Heights (Murphy McKeon, P.C., attorneys; David J. Ruitenberg, on the brief).

PER CURIAM

In this trip and fall case, plaintiff appeals from an April 8, 2019 order granting summary judgment to defendant Pamela Jengo—a single-family residential homeowner—and defendant Borough of Hasbrouck Heights (the Borough)—the town in which Jengo resided. We affirm as to Jengo, applying settled law pertaining to residential property owners. We reverse as to the Borough, concluding that there are genuine issues of material fact as to whether it had notice of the dangerous condition.

We review the order de novo, applying the same legal standards that govern summary judgment motions. Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 349-50 (2016). That is, we consider the factual record, and reasonable inferences that can be drawn from those facts, "in the light most favorable to the non-moving party," and then decide the legal question of whether the moving party is entitled to judgment as a matter of law. IE Test, LLC v. Carroll, 226 N.J. 166, 184 (2016) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); R. 4:46-2(c)).

I.

We begin by addressing plaintiff's arguments as to Jengo. Plaintiff contends that Jengo—the residential property owner—had a duty to "remedy and repair" a defective public sidewalk in front of her residence because she knew that a dangerous condition existed for approximately thirteen years and did nothing about it. Plaintiff maintains that failing to impose such a duty will allow residential property owners to ignore known-dangerous deterioration on their sidewalks. We apply decades of precedent by the New Jersey Supreme Court and conclude—like the judge—that Jengo owed no duty.

We look at the pertinent facts in the light most favorable to plaintiff. Plaintiff tripped on an elevated and cracked public sidewalk slab (the dangerous condition) located in front of Jengo's single-family residence. Jengo knew about the dangerous condition but did not affirmatively create it. It is undisputed that Jengo did not construct the sidewalk, make any repairs to the sidewalk, or exercise any control over the sidewalk. The area of the accident did not have any plantings, trees, nor shrubs. The dangerous condition pre-existed Jengo's purchase of her home.

To prove a claim of negligence, a plaintiff must demonstrate: "(1) [A] duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." Townsend v. Pierre, 221 N.J. 36, 51 (2015) (quoting Polzo v. County

of Essex, 196 N.J. 569, 584 (2008)).  A plaintiff bears the burden of proving negligence, see Reichert v. Vegholm, 366 N.J. Super. 209, 213-14 (App. Div. 2004), and must prove that a defendant's unreasonable acts or omissions proximately caused his or her injuries, see Camp v. Jiffy Lube No. 114, 309 N.J. Super. 305, 309-11 (App. Div. 1998).  The presence or absence of an enforceable duty is generally a question of law for the court.  Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 502 (1997); see also Doe v. XYC Corp., 382 N.J. Super. 122, 140 (App. Div. 2005).  As to this last point—the imposition of a duty—the common law on premises liability for residential property owners has been settled for decades.

Prior to 1981, our courts did not distinguish between commercial or residential property owners.  That is, commercial and residential property owners in this State, at that time, could not be held liable for injuries occurring on public sidewalks abutting their property, except "for the negligent construction or repair of the sidewalk . . . or for direct use or obstruction of the sidewalk by the owner in such a manner as to render it unsafe for passersby." Yanhko v. Fane, 70 N.J. 528, 532 (1976) (citations omitted).  The law changed in 1981.

4

In Stewart v. 104 Wallace St., Inc., 87 N.J. 146, 149 (1981), the New Jersey Supreme Court modified the law solely as to commercial landowners, holding that such owners could be liable for injuries sustained on sidewalks adjacent to their properties. The Court explicitly limited its holding in Stewart to commercial owners, emphasizing that "[t]he duty to maintain abutting sidewalks that we impose today is confined to owners of commercial property." Id. at 159. The practical impact of that change in the law recognized that a duty existed for commercial property owners but not for residential property owners.

Our premises liability sidewalk jurisprudence has maintained this distinction. The Restatement (Second) of Torts § 363 (Am. Law Inst. 1965) provides the basis for this State's governing legal principles in the area of sidewalk liability. See Deberjeois v. Schneider, 254 N.J. Super. 694, 698-702 (Law Div. 1991), aff'd o.b., 260 N.J. Super. 518 (App. Div. 1992). The judge in Deberjeois explained,

> [t]he rule of non-liability for natural conditions of land is premised on the fact that it is unfair to impose liability upon a property owner for hazardous conditions of his [or her] land which he [or she] did nothing to bring about just because he [or she] happens to live there.
>
> [Id. at 702-03.]

Over the years, the Court has deliberately refused to alter the legal distinction between commercial and residential property owners.

For example, in <u>Luchejko v. City of Hoboken</u>, 207 N.J. 191, 206 (2011), the Court observed that "[o]ur decisions consistently reflect that residential property owners stand on different footing than commercial owners who have the ability to spread the cost of the risk through the current activities of the owner." The Court emphasized the importance of adhering to this distinction, stating:

> The commercial/residential dichotomy represents a fundamental choice not to impose sidewalk liability on homeowners that was established nearly three decades ago. Stare decisis thus casts a long shadow over these proceedings. We should not lightly break with a line of decisions that has promoted settled expectations on the part of residential property owners.
>
> . . . .
>
> The rationale of <u>Stewart</u> . . . remains sound and there are no changed circumstances such that reevaluation is necessary. Although the sidewalk liability line of cases has contained spirited concurrences and dissents arguing for broader liability, those separate opinions registered simple disagreements with the majorities' point of view and did not foretell difficulties that have come to pass in administering the commercial/residential distinction.
>
> [<u>Id.</u> at 208-09 (citations omitted).]

6

As we noted in 2013: "(1) [T]he Court has acknowledged repeatedly that residential property owners are generally not liable for sidewalk injuries; (2) the Court has maintained the fundamental notion that commercial property owners are better prepared to spread the risk of loss to innocent third parties than residential homeowners[.]" Grijalba v. Floro, 431 N.J. Super. 57, 66 (App. Div. 2013); see also Lodato v. Evesham Township, 388 N.J. Super. 501, 507 (App. Div. 2006) (holding residential landowners remain protected by common law public sidewalk immunity); Smith v. Young, 300 N.J. Super. 82, 84-85 (App. Div. 1997) (reiterating that commercial landowners are responsible for maintaining sidewalks abutting their property). Residential owners, however, are liable if they—unlike here—negligently build or repair the sidewalk in a manner that causes the sidewalk's dangerous condition. Luchejko, 207 N.J. at 210. These legal principles have remained unchanged—by our Court and Legislature.

Plaintiff urges us to apply the standards set forth in the Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 54 (Am. Law Inst. 2012).[1] Section 54 of the Third Restatement provides in pertinent part:

---

[1] Plaintiff has not cited, and we are unaware of, any jurisdiction in the nation that has adopted section 54 of the Third Restatement.

(b) For natural conditions on land that pose a risk of physical harm to persons or property not on the land, the possessor of the land

(1) has a duty of reasonable care if the land is commercial; otherwise

(2) has a duty of reasonable care only if the possessor knows of the risk or if the risk is obvious.

See Michael K. Steenson, Minnesota Negligence Law and the Restatement (Third) of Torts: Liability for Physical and Emotional Harms, 37 Wm. Mitchell L. Rev. 1055, 1058-62 (2011) (discussing the Third Restatement and how it differs from the Second Restatement).

Founded in 1923, the American Law Institute (ALI) embarks on law reform projects, known as "Restatements," seeking to clarify areas of the common law. David A. Logan, Article, When The Restatement Is Not A Restatement: The Curious Case Of The "Flagrant Trespasser," 37 Wm. Mitchell L. Rev. 1448, 1448-49 (2011). The Restatements' goal is not only to clarify the law, but also to promote changes "which will tend better to adapt the laws to the needs of life." Id. at 1452 (citation omitted).

The Restatements' reporters occasionally assert positions that lack legal authority and scholarship. Id. at 1457-58 (explaining that the named reporter of section 402A of the Second Restatement provided "scant doctrinal foundation,

as [he] could point to virtually no case authority and relatively little scholarship"). Pertaining to the Third Restatement, the reporters created a general duty of care and an entirely new legal category called the "flagrant trespasser." Id. at 1475. The reporters recognized that such changes are not based on common law, but rather "a belief that existing law was flawed." Ibid. Restatements are non-binding unless adopted by a court or legislature. Id. at 1482.

The New Jersey Supreme Court has not adopted section 54 of the Third Restatement since the section's creation in 2012. Our courts have only adopted specific sections of the Third Restatement. This state adopts portions of the Restatements when it sees fit. See Ross v. Lowitz, 222 N.J. 494, 507-08 (2015) (stating that the Court adopted section 824 of the Second Restatement). For instance, the Court adopted section 3 of the Third Restatement's "indeterminate product test" in Myrlak v. Port Authority of New York & New Jersey, 157 N.J. 84, 103-07 (1999). This court also adopted section 16 of the Third Restatement of Products Liability in Green v. General Motors Corp., 310 N.J. Super. 507, 526-27 (App. Div. 1998).

There is a consensus that residential property may be liable for dangerous conditions on abutting sidewalks only when their affirmative acts cause the

dangerous conditions. C.P. Jhong, <u>Liability of Abutting Owner or Occupant For Condition of Sidewalk</u>, 88 A.L.R.2d 331 (1963); <u>see also</u> The Honorable Mark C. Dillon, <u>Breaking The Ice: How Plaintiffs May Establish Premises Liability In "Black Ice" Cases Where The Dangerous Condition Is By Definition Not Visible Or Apparent To Property Owners</u>, 43 Hofstra L. Rev. 691, 709 (2015) (stating that New York imposes liability on a residential property owner when the landowner affirmatively acts).[2] In New Jersey, single-family residential property owners' liability is based on common law; no statute imposes such a duty.

In the absence of contrary guidance from our State's highest court or the Legislature, we accordingly continue to apply the Second Restatement standards. As to the Third Restatement, we recently said "[b]ecause we are an intermediate appellate court, we are bound to follow the law as it has been expressed by . . . our Supreme Court." <u>Scannavino v. Walsh</u>, 445 N.J. Super.

---

[2] <u>See also</u> Donald F. Burke, Jr., <u>Slipping Through the Cracks: The Shoddy State of New Jersey Sidewalk Liability Law Cries Out For Repair</u>, 36 Seton Hall Leg. J., 225, 227-32 (2012) (discussing New Jersey's history of sidewalk liability and recent developments pertaining to commercial property owners). This article argues against imposing liability on any property owner, even commercial property owners, unless such owners affirmatively act and cause the dangerous condition. <u>Id.</u> at 267-68. The author does not mention section 54 of the Third Restatement.

162, 172-73 (App. Div. 2016) (second alteration in original) (quoting Lake Valley Assocs., LLC v. Township of Pemberton, 411 N.J. Super. 501, 507 (App. Div. 2010)); Lodato, 388 N.J. Super. at 507 (declining to adopt Section 54 of the Third Restatement). Thus, we affirm as to Jengo.

II.

We now turn to the Borough. The judge granted summary judgment to the Borough, finding it had no actual or constructive notice of the dangerous condition. On the notice issue, plaintiff contends fact issues preclude the entry of the order.

Generally, "a public entity is 'immune from tort liability unless there is a specific statutory provision' that makes it answerable for a negligent act or omission." Polzo v. County of Essex, 209 N.J. 51, 65 (2012) (quoting Kahrar v. Borough of Wallington, 171 N.J. 3, 10 (2002)). A public entity may be liable if "a negligent or wrongful act or omission of [its] employee . . . create[s] the dangerous condition" or, if it "had actual or constructive notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." N.J.S.A. 59:4-2(a), (b). As the Court has repeatedly stated,

> to impose liability on a public entity pursuant to
> [N.J.S.A. 59:4-2], a plaintiff must establish the

A-4069-18T1

existence of a "dangerous condition," that the condition proximately caused the injury, that it "created a reasonably foreseeable risk of the kind of injury which was incurred," that either the dangerous condition was caused by a negligent employee or the entity knew about the condition, and that the entity's conduct was "palpably unreasonable."

[Vincitore v. N.J. Sports & Exposition Auth., 169 N.J. 119, 125 (2001) (quoting N.J.S.A. 59:4-2).]

The law is also settled as to what constitutes constructive notice of a dangerous condition under the Torts Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. N.J.S.A. 59:4-3(b) provides:

A public entity shall be deemed to have constructive notice of a dangerous condition . . . only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character.

[(Emphasis added).]

It is true that "[t]he mere '[e]xistence of an alleged dangerous condition is not constructive notice of it.'" Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 243 (App. Div. 2013) (second alteration in original) (quoting Sims v. City of Newark, 244 N.J. Super. 32, 42 (Law Div. 1990)). But here, the factual question is whether the dangerous condition—a two-inch differential in the sidewalk slabs—was so obvious that the Borough "in the exercise of due care,

should have discovered the condition and its dangerous character," especially because the dangerous condition existed for a minimum of thirteen years.

It is settled that "[w]hether a public entity is on actual or constructive notice of a dangerous condition is measured by the standards set forth in N.J.S.A. 59:4-3(a)[3] and (b), not by whether [for example] 'a routine inspection program' by the [public entity] . . . would have discovered the condition." Polzo, 209 N.J. at 68. Plaintiff does not argue that the Borough failed to conduct a routine inspection, and had it done so, the Borough would have discovered the dangerous condition. Rather, plaintiff contends that Borough representatives visited Jengo's house at the time she purchased her home, and that they "should have" discovered the dangerous condition.

The judge concluded that the Borough did not have actual or constructive notice of the sidewalk's dangerous condition. He based that finding on Borough representatives' deposition testimonies. The Borough's Department Administrator, Mr. Nicholas Melfi, Jr., did not know of the dangerous condition. The Borough's Zoning Official, Mr. Gino Tessaro, testified that he does not evaluate a property's exterior when he inspects a property for a certificate of

---

[3] Under section (a), "[a] public entity shall be deemed to have actual notice of a dangerous condition . . . if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character."

occupancy. The Borough's inspector in its building department, Mr. Ronald Monteleone, testified that his predecessor did not inspect the property's exterior when Jengo bought the property.

There is nothing in the record to show the Borough received any complaints about the sidewalk's dangerous condition from Jengo, its employees, or the community. Thus, it did not have actual notice. However, viewing all facts in the light most favorable to plaintiff, there are genuine issues of fact pertaining to constructive notice. Although the record does not reflect any direct complaints, the dangerous condition existed for at least thirteen years. And it is undisputed that the Borough's representative arrived at Jengo's home to issue a certificate of occupancy when she purchased her home.

Plaintiff also contends that the Borough had constructive notice because it undertook "Streetscape" projects at intersections near residential properties, which reduces the grade of the sidewalk to the roadway. Plaintiff asserted that Borough representatives should have discovered the dangerous condition during these projects because its engineers were present near the dangerous condition to prepare specifications for outside bidding. Giving the benefit of all reasonable inferences, we conclude that genuine issues of material fact exist as to whether the dangerous condition—a two-inch slab differential—was "of such

14

an obvious nature that the [Borough], in the exercise of due care, <u>should</u> have discovered the condition and its dangerous character," (emphasis added), especially because Borough representatives were present on and around Jengo's property.

Affirmed as to Jengo; reversed and remanded as to the Borough. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4069-18T1