909 A.2d 745 (2006)
Robert LODATO, Plaintiff-Appellant,
v.
EVESHAM TOWNSHIP, Shade Tree Commission of Evesham Township, Stephen and Tana Baughn, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued October 3, 2006.
Decided November 1, 2006.
*746 Stephen M. Tatonetti, Camden, argued the cause for appellant (DuBois, Sheehan, Hamilton & Levin, attorneys; Mr. Tatonetti, on the brief).
Michelle L. Corea, Mt. Laurel, argued the cause for respondents Evesham Township and Shade Tree Commission of Evesham Township (Capehart & Scatchard, attorneys; Ms. Corea, on the brief).
William L. Lundgren, III, Cherry Hill, argued the cause for respondents Stephen and Tana Baughn (Green, Lundgren & Ryan, attorneys; Mr. Lundgren on the brief).
Before Judges LINTNER, S.L. REISNER and C.L. MINIMAN.
The opinion of the court was delivered by
LINTNER, J.A.D.
Plaintiff, Robert Lodato, tripped and fell over a sidewalk slab raised by a tree root, fracturing the medial malleolus of his left ankle. He instituted a personal injury suit against defendants Stephen and Tana Baughn (the Baughns), owners of the residence in front of which he fell, Evesham Township (the Township), and the Shade Tree Advisory Commission of Evesham Township.[1] Defendants moved for summary judgment. Applying the applicable provisions of the Tort Claims Act (TCA), specifically N.J.S.A. 59:4-3, the judge determined that there was no actual or constructive knowledge to establish a prima facie case of liability against either the Township or the Shade Tree Advisory Commission. Thereafter, the judge granted the Baughns' motion for summary judgment, finding that they had no common-law duty to maintain the sidewalk in front of their home.[2]
*747 Plaintiff's motion for reconsideration was denied and he appealed. We affirm the orders entering summary judgment in favor of the Baughns and the Shade Tree Advisory Commission. However, we are satisfied that plaintiff's proofs were sufficient to create a question of fact as to whether the Township had constructive notice under N.J.S.A. 59:4-3b. Accordingly, we reverse the order granting summary judgment in favor of the Township and remand the matter for trial.
We restate the relevant facts, giving plaintiff the benefit of all favorable inferences. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). Plaintiff's fall occurred on May 25, 2001, at approximately 6:00 p.m. while he was walking his dog on the public sidewalk along Conestoga Drive in Marlton. Roots from a tree located between the sidewalk and the street had raised the sidewalk slab in front of the Baughns' house about four inches. Although plaintiff had walked around the neighborhood, he had not walked on that particular sidewalk prior to the accident. At the time, plaintiff was in the process of rushing home because the sky had become quite dark and he believed it was about to rain.
The Baughns' property is located diagonally across the street from J. Harold Van Zant Evesham Public Elementary School. The school maintains two crosswalks across Conestoga Drive, one of which is adjacent to the Baughns' property. According to plaintiff, Conestoga Drive is "the main access road that not only connects two very large developments, but is the primary road that is used by anyone living in those developments to enter and exit same."
The sidewalk in front of the Baughns' home has been in the raised condition since they purchased the home almost eighteen years before the accident. At the time they purchased the house, the Baughns requested that the sidewalks be repaired as part of the closing, but were informed by the prior owner "that the sidewalks and the trees were the responsibility of the Township and that they were not going to do anything about it." According to Steven Baughn, most, if not all, the houses on his block have or have had a raised sidewalk. Indeed, Steven Baughn testified at a deposition that the neighbors on either side of his home had the shade trees removed in order to repair the sidewalks in front of their homes. The tree in front of the Baughns' home had originally been planted by the developer of the property. Although Steven Baughn claimed that he had never received any complaints regarding the condition of the sidewalk, Tana Baughn testified that a woman did knock on her door one day and stated that she had fallen on the sidewalk. Tana gave the woman her insurance information, however, she never heard from the woman again. The Baughns have never notified the Township about the condition of the sidewalk in front of their home.
Chapter 133 Article 1, §§ 5 and 6 of the Township Ordinances provide:
§ 133-5. Responsibility of owner for maintenance.
A. The owner of any premises in Evesham Township abutting a sidewalk or curb shall, at his own cost and expense, keep and maintain such sidewalk or curb in good condition and state of repair, and shall not permit the same to fall into a state of disrepair or to become unfit or unsafe to walk upon. In the event that any such sidewalk or curb, or any part thereof, becomes unsafe or hazardous to the public or unfit to walk upon, the abutting owner, at his own cost and expense, shall with all expeditious speed, reconstruct or *748 repair, as the facts may require, such sidewalk or curb or that part thereof which requires reconstruction or repair.
. . . .
§ 133-6. Remedy upon failure to repair; costs as lien.
In the event that the abutting owner fails to reconstruct or repair his sidewalk or curb or such part thereof as may require reconstruction or repair, as provided in this Article, Evesham Township may cause the said improvement or work to be made under the supervision of the Department of Public Works and/or the Township Engineer as directed by the Township Manager, or may award a contract therefor and assess the cost thereof upon the property of the abutting owner in accordance with the law in such case made and provided.
Chapter 33 of the Township Code, established by ordinance in 1984, provides for a Shade Tree Advisory Commission. The Shade Tree Advisory Commission is composed of five to seven residents of the Township, appointed by the Township Council, who serve without compensation. Section 33-5 sets forth the following pertinent duties:
A. The Shade Tree Advisory Commission shall be responsible for developing and/or updating annually a Shade Tree Master Plan for the care, preservation, pruning, planting, replanting, removal or disposition of trees and shrubs along the streets, in parks and in other public places.
B. Such plan shall be presented annually to the Township Council in January as part of its budget presentation and, upon its acceptance and approval, shall constitute the official Master Plan for Evesham Township.
C. The Master Plan shall include:
(1) The spacing of trees.
(2) Distance from curb and sidewalk.
(3) Distance from street commons and fireplugs and sewer line.
(4) Caliper.
(5) Specifications.
(6) Species of trees.
(7) Current deficiencies and replacement program.
. . . .
E. The Shade Tree Advisory Commission shall investigate and recommend to the Township Manager at his request appropriate action to be taken on individual resident's requests for tree removals or tree trimming or tree planting, as pertaining to trees along streets, parks and other public places.
Paul Tomasetti, the Public Works Director for the Township and a member of the Shade Tree Advisory Commission, testified at his deposition that the Department of Public Works (DPW) is not involved with inspecting and repairing sidewalks within the Township. The DPW is responsible for "[s]treet sweeping, tree removal, snow and ice removal; road repair, trash collection, [and] leaf collection." The DPW removes trees at the request of a resident, at Township expense "on an as-call basis, provid[ed] the recommendation to remove the tree is legitimate."
Tomasetti did not recall if any trees had been removed along Conestoga Drive. He did not bring any records with him to his deposition. According to Tomasetti, the Shade Tree Advisory Commission does not recommend that trees be removed. Instead, individual complaints about raised sidewalks caused by tree roots come to him at the DPW. Upon receipt of a complaint, *749 he advises the individual to "write down what [the] complaint is, specify exactly what needs to be done, and Public Works will, shortly thereafter, remove the tree." Tomasetti stated that the tree roots are also removed by the DPW "[b]ecause, obviously, that's what's creating the problem," but "it's the resident's responsibilities [sic] to repair the sidewalk." Tomasetti does not go to the Shade Tree Advisory Commission for approval to remove a tree; rather, removal of a tree is at his sole discretion. After being shown a photograph depicting the tree and raised sidewalk in question, Tomasetti conceded that the condition was "obviously" the type of condition that if he had been notified, the tree would have been placed on the DPW's removal list. As a member of the Shade Tree Advisory Commission, Tomasetti has never seen a Shade Tree Master Plan. According to Tomasetti, the purpose of the Shade Tree Advisory Commission is to make recommendations as to what types of trees to plant and where to plant them. It is an advisory committee, not an enforcement committee.
With this factual backdrop in mind, we examine first the summary judgment entered in favor of the Baughns. Plaintiff argues that because the Baughns were obligated under the Township ordinances to maintain and care for the sidewalk, they should be held liable for failure to repair the sidewalk. Relying on Yanhko v. Fane, 70 N.J. 528, 362 A.2d 1 (1976) and Stewart v. 104 Wallace St., Inc., 87 N.J. 146, 432 A.2d 881 (1981) (holding that residential landowner common-law immunity does not apply to commercial landowners), the motion judge correctly found that residential landowners are protected by common-law public sidewalk immunity. Since those decisions, our Supreme Court has continued to apply "the well-settled principle that municipal ordinances do not create a tort duty, as a matter of law." Brown v. St. Venantius Sch., 111 N.J. 325, 335, 544 A.2d 842 (1988) (citations omitted). "[A]s an intermediate appellate court, [we] are not free to deviate from what we regard as the Supreme Court's presently articulated view," immunizing abutting residential landowners from liability. Liptak v. Frank, 206 N.J.Super. 336, 338-39, 502 A.2d 1147 (App.Div.1985), certif. denied, 103 N.J. 471, 511 A.2d 652 (1986). The Baughns were entitled to summary judgment.
The blanket immunity from liability for dangerous conditions of public sidewalks enjoyed by residential landowners is not necessarily available to municipalities. Municipal liability for injuries to pedestrians using public sidewalks is "governed by those provisions of the TCA that relate to dangerous conditions of public property." Norris v. Borough of Leonia, 160 N.J. 427, 448, 734 A.2d 762 (1999). We, therefore, focus our attention on plaintiff's claims against the Township and Shade Tree Advisory Commission.
Plaintiff maintains that the Shade Tree Advisory Commission is not entitled to statutory immunity because it was not adopted pursuant to statutory authority. He essentially asserts that it is liable to the same extent as the municipality. Relying on Petrocelli v. Sayreville Shade Tree Comm'n, 297 N.J.Super. 544, 688 A.2d 669 (App.Div.1997), the Shade Tree Advisory Commission claims that it is entitled to blanket immunity pursuant to N.J.S.A. 40:64-14. N.J.S.A. 40:64-1 to -14 allows for the creation of an independent shade tree commission by municipalities. Pursuant to N.J.S.A. 40:64-5a, a shade tree commission established under the statute has "full and exclusive control over the regulation, planting and care of shade and ornamental trees and shrubbery . . . *750 planted in any public highway, park or parkway." N.J.S.A. 40:64-14 provides:
Nothing in this chapter contained shall be construed to make any shade tree commission or any member thereof, or any volunteer participating in a community forestry program as provided for by [L. 1996, c. 135, § 4], responsible for the death or injury of any person, or for an injury to any property or highway tree or shrub. Liability for any such death or injury shall be governed by the provisions of [L. 1996, c. 135, § 16] and any other relevant provisions of the "New Jersey Tort Claims Act," N.J.S. 59:1-1 et seq.
In Petrocelli, supra, 297 N.J.Super. at 545, 688 A.2d 669, the plaintiff, who was injured when her bicycle hit an uneven sidewalk raised by a tree root, named the Sayreville Shade Tree Commission as the only defendant. The defendant Shade Tree Commission was created pursuant to the provisions of N.J.S.A. 40:64-1 to -14. Id. at 546, 688 A.2d 669. The panel concluded that the Commission was thus entitled to "absolute immunity of N.J.S.A. 40:64-14." Id. at 549, 688 A.2d 669. We come to a somewhat different conclusion here.
Learn v. City of Perth Amboy, 245 N.J.Super. 577, 586 A.2d 327 (App.Div. 1991), differentiated between independent shade tree commissions created under N.J.S.A. 40:64-1 to -14 and advisory shade tree commissions. Unlike its statutory counterpart, an advisory commission has "no power, no control . . . no appropriation [and] is not the equivalent of the statutory shade tree commission, which is characterized by all these indicia of autonomy." Id. at 584, 586 A.2d 327. A statutory shade tree commission has the "power to . . . require the removal of any tree, or part thereof, dangerous to public safety." N.J.S.A. 40:64-5. However, here, the Shade Tree Advisory Commission's powers, which have never been implemented, are limited to investigating and recommending to the Township Manager, at his request, appropriate actions to be taken on an individual's request for tree removal, and to submitting a Master Plan to the Township Council for approval. Indeed, discovery established that it is the Director of Public Works who determines, at his sole discretion, whether trees are to be removed upon receipt of notice from an individual. Simply stated, under the Township Code, the power to act remains in the hands of the Township officials and those officials have not required the Shade Tree Advisory Commission to perform its advisory function to investigate or recommend what trees should be removed.
We need not determine here whether a shade tree commission created under N.J.S.A. 40:64-1 enjoys absolute immunity as decided by the panel in Petrocelli or whether that immunity is qualified by the reference to the TCA in N.J.S.A. 40:64-14. Unlike the facts in Petrocelli, the Township is named as a defendant and the Shade Tree Advisory Commission is not a statutory independent entity but is part of the municipal entity that created it. Thus, we examine the applicable provisions of the TCA to determine whether summary judgment was appropriate.
Under N.J.S.A. 59:4-2, a plaintiff may prevail against a public entity on the ground that it failed to protect against a dangerous condition of public property, if the proofs establish
that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

*751 a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
A public entity is considered to have actual notice of a dangerous condition, for purposes of N.J.S.A. 59:4-2, if the entity "had actual knowledge of the existence of the condition and knew or should have known of its dangerous character." N.J.S.A. 59:4-3a. Alternatively, a public entity may be charged with constructive notice
if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character.
[N.J.S.A. 59:4-3b.]
In order to qualify as public property, the area causing the danger must be owned or controlled by the public entity. See Norris, supra, 160 N.J. at 443, 734 A.2d 762.
The record does not establish any proof that the Shade Tree Advisory Commission, as a public body, had any actual power to control the removal of trees. Under the Township Code, the Shade Tree Advisory Commission, as a body, was limited to investigating and making recommendations regarding complaints if, and only if, requested by Township managers  a procedure that was never implemented. The Shade Tree Advisory Commission, as a body, had no control, and was never put in a position by the officials that controlled tree removal, to acquire actual or constructive knowledge of any dangerous condition. Accordingly, to the extent, if any, that the Commission was a separate body within the jurisdiction of the Township, it was entitled to immunity under the TCA and summary judgment was appropriate.
Tomasetti, as the Director of Public Works, controlled, at his sole discretion, the removal of trees along sidewalks where roots caused, what he perceived to be, unacceptable upheaval of the adjoining sidewalk. The Township correctly points out that plaintiff's proofs failed to establish actual notice of a dangerous condition on the part of the Township.
The issue that remains is whether plaintiff presented sufficient proofs to establish constructive knowledge, that is to say, the condition "existed for such a period of time and was of such an obvious nature that the [Township], in the exercise of due care, should have discovered the condition and its dangerous character." N.J.S.A. 59:4-3b. Determining that plaintiff's proofs fell short, the motion judge relied heavily on the facts and decision in Norris, supra, 160 N.J. at 447-48, 734 A.2d 762.
In that case, Angela Norris fell when the curb in front of her house collapsed as she stepped onto it. Id. at 429, 734 A.2d 762. She testified that she was aware of numerous cracks in the curbing in front of her house for three or four years prior to the accident, however she never complained to Borough officials. Id. at 447, 734 A.2d 762. She relied instead on an affidavit from a neighbor who lived across the street and stated that the curb in front of his house was in poor condition and that he had sent photographs of the curb to the Borough in the past. Ibid. Concluding that the neighbor's complaint could not serve as notice to the Borough, the Court observed that, "[e]ven assuming the validity" of the neighbor's complaint, it did not specify any dates and the property was on the other side of the street from plaintiff's house. Ibid. The Court also noted that *752 the "plaintiff herself stated that the condition of curbing on the street varied from home to home, with most of it `pretty bad,' although `[n]ot all.'" Ibid. Although recognizing that "[c]omplaints of neighborhood residents about a dangerous condition may serve to establish actual or constructive notice to a municipality of that condition," the Court concluded that the neighbor's complaint could not "serve as notice of a defective curb at a different location." Id. at 447-48, 734 A.2d 762.
The judge rejected plaintiff's assertion that the Baughns' neighbors' complaints to the Township about similar problems established constructive notice. He found that, like the facts in Norris, those conditions occurred at a different location, and he granted the Township's motion. The circumstances before us as they relate to constructive knowledge are sufficiently different from those in Norris to compel us to conclude that, at the very least, a jury question was presented. First and foremost, unlike the condition in Norris, the tree roots and raised sidewalk condition is open and obvious. The condition in Norris consisted of cracks in a curb. Although Angela Norris was aware of the cracks, she nevertheless stepped on the curb, thus suggesting that the internal instability which caused it to collapse when her weight was applied was hidden and certainly not known to her. By contrast, here, the tree roots that caused the sidewalk to heave were so apparent that the Director of the DPW conceded that "obviously" the tree required removal.
The evidence here also established that the same condition existed for almost eighteen years before the accident and that similar conditions existed throughout the neighborhood. Unlike the facts in Norris, the homeowners on both sides of the Baughns' home had the same type of condition in front of their houses, and presumably, DPW personnel came out and removed the trees. Inferentially, the Director of the DPW, who had the sole authority to act, had to approve those removals. Thus, the evidence, when viewed most favorably for plaintiff, establishes that individuals from the Township were in the immediate vicinity on at least two occasions when they removed trees causing a similar condition adjacent to and on either side of the open and obvious condition that is the subject of this litigation.
We are, therefore, convinced that plaintiff's proofs are sufficient to present a jury question of constructive notice, i.e., whether that dangerous condition is one that "had existed for such a period of time and was of such an obvious nature" that it should have been discovered by the Township. N.J.S.A. 59:4-3b. Accordingly, the order dismissing plaintiff's complaint against the Township is reversed and the matter is remanded for trial. The orders for summary judgment entered in favor of the Baughns and the Shade Tree Advisory Commission are affirmed.
Affirmed in part; reversed and remanded in part.
NOTES
[1] Improperly pleaded as Shade Tree Commission of Evesham Township.
[2] The order granting summary judgment in favor of the Township and the Shade Tree Advisory Commission was entered on September 10, 2004. A transcript of the September 10, 2004, oral argument before the Law Division judge was provided. However, neither an order for summary judgment in favor of the Baughns nor a transcript of the oral argument before the Law Division was provided. Instead, a Tentative Disposition of the Baughns' motion, returnable, on April 1, 2005, was provided. The parties agree that the Tentative Disposition correctly reflects the judge's decision granting summary judgment in favor of the Baughns.