**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2884-21

EDWIN SANTANA,

    Plaintiff-Appellant,

v.

BERGEN COUNTY COMMUNITY
COLLEGE, and CREAM RIDGE
CONSTRUCTION CO., INC.,

    Defendants-Respondents,

and

CITY OF HACKENSACK,
COUNTY OF BERGEN, and
STATE OF NEW JERSEY,

    Defendants.

_____

Argued January 9, 2024 – Decided March 19, 2024

Before Judges Whipple, Enright and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-3057-19.

Jeffrey Eric Salomon argued the cause for appellant (Davis, Saperstein & Salomon, PC, attorneys; Jeffrey Eric Salomon, on the briefs).

William J. Hamilton argued the cause for respondent Bergen County Community College (Decotiis, Fitzpatrick, Cole & Giblin, LLP, attorneys; Amy E. Shotmeyer and William J. Hamilton, of counsel and on the brief).

PER CURIAM

Plaintiff Edwin Santana appeals from a February 4, 2022 order granting defendant Bergen County College (BCC) summary judgment and a March 22, 2022 order denying reconsideration of same. Since we conclude summary judgment was erroneously granted, we vacate and remand.

We glean the facts and procedural history from the motion record. In May 2018, Santana was walking along a sidewalk abutting the property of BCC. The sidewalk slabs were uneven, and Santana testified that the heel of his left foot hit the corner of the uneven slab and he fell. He explained that he had a heel problem, "it flaps," and his heel struck the corner. Santana contends he sustained severe injuries as a result of the fall.

Santana testified that he had seen the uneven sidewalk slabs in the past. He noted that he "said to [him]self, somebody is going to get hurt there" and the condition had "been there for years." He never complained of the uneven

2

sidewalk condition. Photographs from 2012 depicted the uneven sidewalk condition. The difference between the uneven sidewalk slabs measured one and five-eighths inches to one and three-fourths inches.

BCC's Vice President of facilities, planning, operations, and public safety (VP) testified, at the time of Santana's fall, he operated with the understanding that BCC did not own the sidewalk where Santana fell. He stated that there were no complaints about the uneven sidewalk. He testified generally that an uneven sidewalk, in excess of three-fourths of an inch, would require "action." He also testified that at times, when he noticed an unsafe condition, he "spray-painted [it] orange, put a cone over it, [or used] caution tape."

The VP explained that "public safety" included about 40 public safety officers who worked 365 days a year. He stated that if a public safety officer came upon a "tripping hazard" or "slipping hazard," they "would take a report." The VP explained, at the BCC location where Santana fell, there would be two public safety officers who would patrol the sidewalk daily.

Santana filed a complaint against BCC, as well as other parties he thought were responsible for the location or the condition of the uneven sidewalk slabs. After discovery, BCC filed for summary judgment. The judge's focus in the motion was limited to whether BCC had constructive notice of the condition and

whether BCC's action, or failure to act, in response to notice was palpably unreasonable. See N.J.S.A. 59:4-2. Therefore, other issues were not analyzed; for example, whether the uneven sidewalk was a "dangerous condition," ibid.; or whether Santana's damages and injuries could satisfy the requirements of N.J.S.A. 59:9-2.

In a February 4, 2022 oral opinion, the motion judge granted BCC summary judgment. She found, since there were no complaints filed about the sidewalk or the difference in elevation of the sidewalk slabs, and the difference in elevation was not uncommon for sidewalks, BCC had neither actual nor constructive notice of the condition. Further, she considered the palpably unreasonable standard—whether "no prudent person" would have approved BCC's "course of action or would have let" the "less than [two] inches of a raised slab" remain—and found "that nothing that [BCC] did or failed to do [could] be deemed to be palpably unreasonable."

Santana filed a motion for reconsideration. On March 22, 2022, the judge denied reconsideration. In her seven-page written opinion, the judge determined "no prudent person would conclude or agree with [Santana], based on th[e] evidential record, that [BCC] had notice of a dangerous condition, which omission of leaving the condition without repair was palpably unreasonable."

4

She found "[t]he record d[id] not evidence any notice, either actual or constructive, on [BCC] with regard to th[e] 'dangerous condition.'" Further, she found "[n]o reasonable jury would conclude that when [BCC] permitted the elevated condition to remain, such omission was patently unacceptable nor [wa]s it clear and obvious that a reasonably prudent person would disapprove of the omission."

On appeal, Santana argues the motion judge erred because there was more than sufficient evidence in the record to permit a jury to determine BCC had constructive notice and that BCC's conduct was palpably unreasonable.

We review a ruling on a motion for summary judgment de novo, applying the same standard governing the trial court. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016). Thus, we consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citation omitted). We

5

review issues of law de novo and accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013). "The factual findings of a trial court are reviewed with substantial deference on appeal, and are not overturned if they are supported by 'adequate, substantial and credible evidence.'" Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014) (quoting Pheasant Bridge Corp. v. Twp. of Warren, 169 N.J. 282, 293 (2001)).

This standard compels the grant of summary judgment:

> if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law. An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.
>
> [R. 4:46-2(c).]

In adopting the Tort Claims Act, N.J.S.A. 59:1-1 to 12-3 (TCA), the Legislature declared "the public policy of this State that public entities shall only be liable for their negligence within the limitations of [the TCA]." N.J.S.A. 59:1-2. Therefore, "[a]pplication of the summary judgment standard . . . must

A-2884-21

. . . account for the fact that under the TCA, 'immunity [of public entities] from tort liability is the general rule and liability is the exception.'" Stewart v. N.J. Tpk. Auth./Garden State Parkway, 249 N.J. 642, 655-56 (2022) (alteration in original) (quoting Garrison v. Twp. of Middletown, 154 N.J. 282, 286 (1998)).

N.J.S.A. 59:4-2 provides:

> A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition caused a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
>
> a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
>
> b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
>
> Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or failure to take such action was not palpably unreasonable.

Under N.J.S.A. 59:4-1, "protect against" is defined to include "repairing, remedying or correcting a dangerous condition, providing safeguards against a dangerous condition, or warning of a dangerous condition."

A-2884-21

Moreover, under N.J.S.A. 59:4-3,

> a. A public entity shall be deemed to have actual notice of a dangerous condition within the meaning of subsection b. of section 59:4-2 if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character.
>
> b. A public entity shall be deemed to have constructive notice of a dangerous condition within the meaning of subsection b. of section 59:4-2 only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character.

The focus of the summary judgment motion was on BCC's constructive notice of the condition—Santana did not argue BCC had actual notice—and whether BCC's conduct was palpably unreasonable. We give Santana all legitimate inferences to determine whether there is a genuine issue as to any material fact challenged as to: (1) BCC's constructive notice of the condition of its sidewalk and (2) whether BCC's response was palpably unreasonable. See R. 4:6-2(c).

Santana argues BCC had constructive notice of the sidewalk condition because "the six-year time [frame] and nearly two-inch height difference . . . are relatively large figures in terms of a hazardous condition." Further, "employees for BCC were . . . present in the vicinity daily." Moreover, Santana contends

8

his knowledge "that the condition had been present for years" supports BCC having constructive notice because he was a pedestrian bystander, with no duty over the sidewalk, while BCC had a "duty to inspect and repair the subject sidewalk."

Santana relies on Chatman v. Hall, 128 N.J. 394 (1992) and Lodato v. Evesham Twp., 388 N.J. Super. 501 (App. Div. 2006), to support his contention that BCC had constructive notice. In Chatman our Court held "[t]he length of time during which the hole existed as well as its alleged size create[d] a reasonable inference that the defendant employees had either actual or constructive notice of the hole, as d[id] the affidavit of a neighbor who reported the hole." Chatman, 128 N.J. at 418.

Moreover, in Lodato, "we [we]re satisfied that plaintiff's proofs were sufficient to create a question of fact as to whether the Township had constructive notice under N.J.S.A. 59:3-4b." Lodato, 388 N.J. Super. at 503. We concluded: (1) the "condition [wa]s open and obvious"; (2) "the same condition existed for almost eighteen years before the accident and that similar conditions existed throughout the neighborhood"; and (3) "individuals from the Township were in the immediate vicinity on at least two occasions when they removed trees causing a similar condition adjacent to and on either side of the

open and obvious condition that [wa]s subject to th[e] litigation." Id. at 511-12. "We [we]re, therefore, convinced that plaintiff's proofs [we]re sufficient to present a jury question of constructive notice, i.e., whether that dangerous condition [wa]s one that 'had existed for such a period of time and was of such an obvious nature' that it should have been discovered by the Township." Id. at 512.

Santana acknowledges the dangerous condition in Lodato was "a nearly [four]-inch[-]high difference in the sidewalk heights and an eighteen-year period," but avers there is "nothing to suggest that these are minimum requirements" to establish constructive notice. He contends "the six-year time [frame] and nearly two-inch height difference . . . are relatively large figures in terms of a hazardous condition." Further, he notes in Lodato, the "individuals from the [T]ownship were in the immediate vicinity on at least two occasions," while here, the employees for BCC were in the vicinity daily.

BCC responds that Chatman and Lodato are distinguishable from the matter at bar. BCC notes that Santana does not allege the condition created an audible noise, like plaintiff's assertion in Chatman, "that he could hear cars passing over the hole from inside his home." Chatman, 128 N.J. at 399. Further, in Chatman, there was an allegation supported by affidavit, "that calls were

made to the City by . . . a nearby resident, at least a year before the accident, complaining about the hole," although the City had no record of the calls. Id. at 400. Therefore, in Chatman the City "potentially" had actual notice.

While we recognize the factual distinctions BCC draws between Chatman and this matter, we nonetheless conclude Chatman is not meaningfully distinguished merely because the dangerous condition there had an auditory factor.

BCC further argues Lodato is distinguishable because there, "the sidewalk had been raised four inches by a tree root, more than double the height of the raised sidewalk in this case, and had been in place for at least eighteen years, far longer than the maximum of six years the alleged dangerous condition may have existed in this case." While we recognize the factual distinction between Lodato and the matter here, we nonetheless agree with Santana that Lodato does not set a minimum standard for constructive notice.

In addition, BCC notes the Township in Lodato was, in part, on constructive notice because its employees had been nearby repairing similar conditions, rather than merely in the vicinity on numerous occasions. BCC argues, it had not previously fixed similar portions of the sidewalk and a third-party, without its approval, replaced the sidewalk in question. We do not find

these distinctions compelling. In Lodato, the repair activity was a factor considered by the court because it placed Township employees in the vicinity of the dangerous condition and may have alerted the employees that other similar conditions existed. Those facts do not discount that BCC's employees were in the vicinity of the sidewalk condition daily, despite not doing any repair work in the area.

Next, BCC contends the "crucial fact in Lodato [was] that [we] found no constructive notice on behalf of the abutting property owners, and only submitted that there was a question of fact regarding the Township's constructive notice." However, BCC's position misstates Lodato's holding as relevant to the abutting property owner. In Lodato, the question of the abutting landowner's liability was not a notice issue. Instead, the abutting landowners, owners of residential property, were "protected by common-law public sidewalk immunity" and entitled to summary judgment. Lodato, 388 N.J. Super. at 507.

BCC also argues Norris v. Bor. of Leonia, 160 N.J. 427 (1999) and Maslo v. City of Jersey City, 346 N.J. Super. 346 (App. Div. 2002) are more analogous to this matter. BCC notes that in Norris, our Court held "a curb condition that had existed for years near similar conditions that had been complained of did

A-2884-21

not create constructive notice."  However, BCC understates the facts in <u>Norris</u>.

In <u>Norris</u>,

> [p]laintiff . . . was aware of numerous cracks in the curbing in front of her house prior to her accident. Plaintiff admitted . . . that for at least the three or four years prior to that time, she had never complained about the condition of the curbing to Borough officials. Plaintiff instead relied on the affidavit of a neighbor . . . to establish notice.  [The neighbor complained] that
>
>> [o]n several occasions . . . [he] telephoned the Borough of Leonia and advised them that the curb <u>in front of [his] house</u> was in poor condition . . . .  Several years ago. [He did] not remember the exact date, [he] sent photographs of the curb to the Borough of Leonia.
>
> [<u>Norris</u>, 160 N.J. at 447 (third alteration in original).]

The Supreme Court assumed the validity of the neighbor's complaints but found those complaints could not "serve as notice to defendant in respect of plaintiff's defective curb."  <u>Ibid.</u>  The Court observed:  (1) the complaints did not specify dates; (2) the neighbor's property was on a different side of the street; and (3) plaintiff stated, "the condition of curbing on the street varied from home to home, with most of it 'pretty bad,' although '[n]ot all.'"  <u>Ibid</u>. (alteration in original).  The Court also noted a neighbor's "complaints about his own curb cannot serve as notice of a defective curb at a <u>different location</u>."  <u>Id.</u> at 447-48.

We conclude the facts in <u>Norris</u> are inapposite from the facts here. Here, Santana is not relying on a timeless complaint of another person regarding a distant location. Instead, Santana alleges a condition existed for six years and BCC's employees were in the vicinity of the condition on a daily basis.

Moreover, BCC relies on our opinion in <u>Maslo</u>. In <u>Maslo</u>, there was no actual notice and plaintiff was not aware of the condition before her fall. <u>Maslo</u>, 346 N.J. Super. at 349. We rejected the notion that since plaintiff's "expert measured the difference in elevation between two portions of the sidewalk at slightly over an inch[] and concluded that the condition must have been in existence for at least a year," she established actual or constructive notice. <u>Id.</u> at 350. In <u>Maslo</u>, we stressed the importance of the legislative policy of the TCA and the inherent difficulty in the public entity's responsibility to maintain its vast amounts of public property. We reaffirm those same important policies here.

Nonetheless, the matter here is distinguishable from <u>Maslo</u>. Here, the sidewalk measurement is greater; the condition lasted longer; Santana was aware of the condition for years; and BCC employees were in the vicinity of the condition on a daily basis.

Therefore, we conclude Santana has raised a genuine issue of material fact as to BCC's constructive notice. Giving Santana every legitimate inference—there was a condition; according to the VP, the height of the condition, in excess of three-eighths of an inch would require action; the condition existed for six years; and the public entity's employees were in the vicinity of the condition daily—he has established a genuine issue of material fact as to constructive notice. Therefore, we conclude summary judgment was improperly granted on this basis.

"[T]he question of whether a public entity acted in a palpably unreasonable manner is a matter for the jury . . . ." Polzo v. Cnty. of Essex, 209 N.J. 51, 75 n.12 (2012). There is no liability "if the action the entity took to protect against the condition or failure to take such action was not palpably unreasonable." N.J.S.A. 59:4-2. Under N.J.S.A. 59:4-1, "protect against" is defined to include "repairing, remedying or correcting a dangerous condition, providing safeguards against a dangerous condition, or warning of a dangerous condition."

"The term 'palpably unreasonable'—as used in N.J.S.A. 59:4-2—'implies behavior that is patently unacceptable under any given circumstance.'" Polzo, 209 N.J. at 75-76 (quoting Muhammad v. N.J. Transit, 176 N.J. 185, 195-96

(2003)). "When a public entity acts in a palpably unreasonable manner, it should be 'obvious that no prudent person would approve of its course of action or inaction.'" Id. at 76 (quoting Muhammed, 176 N.J. at 195-96). "The duty to refrain from palpably unreasonable conduct differs in degree from the ordinary duty of care that is owed under the negligence standard." Ibid.

Santana contends the height of the uneven sidewalk slabs and the length of time the condition existed "exemplifies [BCC's] conduct as being palpably unreasonable." Moreover, he notes that BCC's VP testified that "if he saw such a condition, he would act."

BCC argues the judge "weighed the evidence and viewed all [the] facts in the light most favorable to [Santana and] . . . properly found summary judgment in favor of" BCC. BCC contends Santana "tripped because a sidewalk had a slight dip in elevation." Moreover, "the sidewalk traversed by Santana was used on a daily basis by pedestrians without issue."

However, omitted from BCC's analysis is—there was a condition, the sidewalks slabs were uneven; according to the VP, the height of the condition, in excess of three-eighths of an inch would require action; the condition existed for six years; the public entity's employees were in the vicinity of the condition daily; and BCC did nothing to "protect against" the condition. See N.J.S.A.

16
A-2884-21

59:4-1b.  Giving Santana every legitimate inference, we conclude plaintiff has established a genuine issue of material fact as to whether BCC acted palpably unreasonably.  Therefore, we conclude summary judgment was mistakenly granted to BCC on this basis.

We reiterate the narrow holding in this opinion.  We only conclude that Santana raised genuine issues of material fact regarding BCC's constructive notice of the condition and whether the action it took, or failed to take, to protect against the condition was palpably unreasonable.  We offer no opinion on the merits of any of Santana's claims or the defenses to them, or how these issues are to be resolved.  Accordingly, we vacate the challenged orders and remand for further proceedings consistent with this opinion.  We do not retain jurisdiction.

Vacated and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2884-21