**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2537-23

MICHAEL SHAW,

    Plaintiff-Appellant,

v.

TOWN OF KEARNY, COUNTY
OF HUDSON, and STATE OF NEW
JERSEY,

    Defendants-Respondents.

_____

Argued May 20, 2025 – Decided June 4, 2025

Before Judges Gooden Brown and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-0650-22.

Albert C. Asphall argued the cause for appellant (Davis, Saperstein & Salomon, PC, attorneys; Paul Garfield and Albert C. Asphall, on the briefs).

Mitchell F. Ramirez argued the cause for respondent Town of Kearny (Moreira Sayles Ramirez, LLC, attorneys; Monique D. Moreira and Mitchell F. Ramirez, on the brief).

PER CURIAM

Plaintiff Michael Shaw appeals an April 22, 2024 order granting summary judgment to defendant Town of Kearny and dismissing plaintiff's complaint pursuant to the New Jersey Tort Claims Act.[1]  Plaintiff suffered substantial injuries after tripping in a pothole in the middle of a road maintained by defendant.  Defendant moved for summary judgment, and the trial court granted it pursuant to N.J.S.A. 59:4-2, finding defendant had no actual or constructive notice of the alleged roadway defect.  After reviewing the parties' arguments and the record below, we reverse and remand for trial.

I.

We glean the facts from the comprehensive summary judgment record, viewed in the light most favorable to plaintiff, as the non-moving party.  See Richter v. Oakland Bd. of Educ., 246 N.J. 507, 515 (2021).

A.

The Accident

On January 29, 2021, Michael Shaw tripped and fell on Kearny Avenue in Kearny, New Jersey.  Earlier that evening, on a clear dark night, plaintiff had parked his car on Kearny Avenue to visit a nearby bakery to purchase custard

_____

[1]  N.J.S.A. 59:1-1 to 12-3.

cups.  The bakery was located on the opposite side of the street from where plaintiff parked.  Plaintiff had frequented this bakery more than twenty times before, consistently taking the same route across Kearny Avenue.

Plaintiff successfully crossed Kearny Avenue to reach the bakery.  After his purchase, plaintiff made his way back to his vehicle.  Plaintiff chose to cross Kearney Ave between crosswalks, effectively jaywalking.  As he crossed, plaintiff was holding a box of custard cups with both hands and was not looking at the ground.  He encountered a pothole in the middle of Kearney Ave.  The pothole, which measured approximately 4 feet in length (perpendicular to the roadway) and 12 inches in width (parallel to the striping), caused plaintiff to trip, then lose his balance and fall.  The deepest section of the pothole was approximately 18 inches long by 12 inches wide and at least 2 inches deep.

As a result of the fall, plaintiff suffered significant injuries, including but not limited to a right hip fracture, chronic lumbar strain, and aggravation of other pre-existing conditions.

B.

Notice

The location of plaintiff's fall was a little under 1/3 mile from the Kearny Town Hall and approximately 1.2 miles from the Kearny Department of Public Works ("DPW") complex.

The condition that caused plaintiff's fall did not develop suddenly. The record, which includes Google Maps imagery[2], revealed deterioration of the roadway over time at the accident site. Imagery from August 2012 and September 2015 showed pavement cracking and surface depressions in the road at the accident location. The record shows that between September 2015 and October 2017, roadway surface construction and repair work had been conducted near the accident site. Work crews cut a trench for subsurface utility work directly south of the accident location, then restored the pavement in the area. During this period, contemporaneous imaging show utility markings appeared on the pavement surface, indicating preparations for excavation work. Despite this nearby construction and repair activity on Kearney Ave's roadway surface, the future accident site remained unaddressed. By October 2017, images revealed pavement deterioration at that location.

---

[2] For ease of reference, we use the terms "Google Maps imagery," and "imagery," and "images" interchangeably.

A-2537-23

July 2018 Google Maps imagery showed advanced pavement deterioration at the accident site, including the emergence of a pothole. Between July 2018 and July 2019, while repairs were made to the utility trench cut and to a manhole adjacent to the accident site, the emerging pothole remained untouched. By October 2020, just three months before plaintiff's accident, imaging showed continued deterioration and a distinct pothole.

During this same timeframe, the record shows the town began to address general road conditions on Kearny Avenue. As early as 2018, Neglia Engineering, the engineer hired by the town, assisted Kearny in drafting and filing a grant package with the State of New Jersey Department of Transportation to help pay for the repaving of Kearny Avenue. The stated purpose of this project was to resurface Kearny Avenue due to deterioration caused by traffic and weather.

Neglia Engineering's municipal engineering services included attending meetings, furnishing proposals for capital improvement work, and primarily focusing on roadwork and sidewalk repair. While Neglia Engineering did not provide inspection services for the town's roadways, it did provide engineering cost estimates for the planned improvements.

A-2537-23

In 2020, the town submitted a municipal aid application for repaving Kearny Avenue that included the area where plaintiff would later fall. Neglia Engineering began working on the repaving project. The project, which covered 0.87 miles of roadway, was scheduled to be completed by July 21, 2021.

Throughout 2020, town officials monitored conditions on Kearny Avenue. The record shows that by July 2020 the Kearny town administrator was walking Kearny Avenue to observe paver defects. The administrator's purpose was to identify "paver problem areas" for inclusion in the to-do list for the Kearny Ave improvement project.

Town public works employees were present at the future accident site just months before it occurred. Kevin Murphy, then Assistant Superintendent of Public Works, testified at his deposition that DPW workers were assigned to address a damaged pole reported at 534 Kearny Avenue near the location where plaintiff was injured on both September 17 and September 21, 2020.

Murphy testified that street sweepers pass by this area four times per week, sweeping each side of the street twice weekly. Murphy also testified that when working in an area, he typically inspects the roadway, and he expected his employees to report any potholes they observed.

A-2537-23

No record exists of anyone reporting the pothole before plaintiff's accident. Murphy reviewed the town's complaint system and found no complaints regarding the pothole prior to plaintiff's fall.

Following plaintiff's accident, on March 15, 2021, the Town of Kearny DPW repaired the pothole in question. When this initial repair failed, DPW reopened and refilled the pothole. The second repair lasted until July 2021, when the town implemented its planned repaving of the roadway as part of the previously scheduled Kearny Avenue Roadway Improvements project.

Plaintiff's expert Kelly-Ann Kimiecik, P.E., issued a report. The report was based on her inspection, plaintiff's complaint, depositions, document discovery, including DOT grant applications, and various photos and satellite images of the accident site. During her inspection, Kimiecik observed town employees performing streetscape beautification work along Kearny Avenue, such as watering plants and sidewalk sweeping.

In her report, Kimiecik concluded that the pothole had existed for an extended period (from at least October 2018 through plaintiff's accident in January 2021) and that this demonstrated "the lack of maintenance afforded to the roadway pavement."

A-2537-23

Plaintiff sued, seeking damages for injuries sustained in the accident. The complaint alleged that defendants' negligent ownership, operation, lease, control, supervision, management, maintenance, repair, and inspection of the roadway caused plaintiff to trip and fall, resulting in his injuries. Kearny moved for summary judgment and the trial court granted the motion, making findings in a written statement of reasons. The court found no evidence to suggest that Kearny had actual or constructive notice of the dangerous condition of the street[3]. Because the court did not find constructive notice, it did not reach the question of whether Kearny's conduct was palpably unreasonable.

On appeal, plaintiff argues that the trial court erred by concluding there was no genuine issue of material fact on constructive notice under N.J.S.A. 59:4-2.

II.

"[We] review the trial court's grant or denial of a motion for summary judgment de novo, applying the standard used by the trial court." Sackman Enters., Inc. v. Mayor & Council of Belmar, 478 N.J. Super. 68, 75 (App. Div.

---

[3] The trial court referenced plaintiff's expert report in its written opinion, stating, "[i]n support of its argument, Plaintiff is certain to cite to the engineering report of Kelly Anne Kimiecik." The court does not make any other reference to the expert report in its opinion.

2024) (quoting Samolyk v. Berthe, 251 N.J. 73, 78 (2022)). We "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party[,]" and "accept as true all the evidence which supports the position of the party defending against the motion and must accord [that party] the benefit of all legitimate inferences which can be deduced therefrom[.]" Alloco v. Ocean Beach & Bay Club, 456 N.J. Super. 124, 134 (App. Div. 2018) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 535, 540 (1995)).

We grant summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and [where] the moving party is entitled to a judgment or order as a matter of law." Green v. Monmouth Univ., 237 N.J. 516, 529 (2019) (quoting R. 4:46-2(c)). A fact is material and genuine where "the 'competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" Franco v. Fairleigh Dickinson Univ., 467 N.J. Super. 8, 24 (App. Div. 2021) (quoting Brill, 142 N.J. at 540). The trial court's

legal analysis or statutory interpretation is not entitled to any deference.  <u>RSI</u>

<u>Bank v. Providence Mut. Fire Ins. Co.</u>, 234 N.J. 459, 472 (2018); <u>Nicholas v.</u>

<u>Mynster</u>, 213 N.J. 463, 478 (2013).

III.

N.J.S.A. 59:4-2(b) states:

> A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that . . .
>
> > b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
>
> Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

In its statement of reasons, the court found no actual notice in the record

and correctly noted that plaintiff could not pursue a negligent inspection claim

10

because of Kearny's statutory immunity under N.J.S.A. 59:2-6.[4]  Turning to

plaintiff's argument of constructive notice under N.J.S.A. 59:4-2(b), the court

stated:

> Plaintiff does, however, argue that Kearny should have known of the dangerous condition because of the size of the pothole and the length of time that it existed.  To support his argument, [p]laintiff cites to Chatman and Lodato.  This Court does not find [p]laintiff's arguments persuasive.  In Chatman, plaintiff filed a complaint against defendant public employees after an accident that was caused by a hole in a public street.  Chatman v. Hall, 128 N.J. 394 (1992).  The trial court granted summary judgment to defendants and held that defendants were immune because their discretionary decisions fell within the statute providing qualified immunity for the discretionary acts of public employees . . . . The Supreme Court . . . held that the length of time during which the hole existed, as well as its size, created a reasonable inference that the defendant employees had either actual or constructive notice of the hole.  Id. at 418.  The Court did not, however, address the time element and provide guidance as to how long the dangerous condition needed to exist to permit the reasonable inference for constructive notice.
>
> In Lodato, plaintiff fractured his left ankle after falling while walking his dog on the public sidewalk.  388 N.J. Super. 501 (App. Div. 2006).  The Appellate Division held that the plaintiff made a showing that the condition of the sidewalk was open and obvious and had existed for eighteen years and that the township's employees

---

[4]  N.J.S.A. 59:3-7 states in pertinent part, "nothing in this section . . . shall . . . exonerate a public employee for failure to protect against a dangerous condition as provided in [N.J.S.A. 59:4-3]."

were called to the same area to repair similar conditions. Ibid. The court held that such proofs were sufficient to create a question of fact as to whether the township had constructive notice of the dangerous condition.

The court went on to distinguish Lodato:

In this case . . . there is no evidence to suggest that the pothole existed for such an extended period of time. Here, the only evidence to suggest that the pothole existed for any length of time are Google Maps pictures from 2019. Exhibit F. In these pictures, a large crack in the pavement can be seen and what could potentially be a tiny hole in the pavement. It is unclear from these photos whether there is an actual hole in the pavement or if this is merely a part of the crack in the street. However, even assuming arguendo, that this is an actual hole in the pavement, this Court does not find that the hole is of such a large size to be "open and obvious." Here . . . the dangerous condition was not so "open and obvious" to prevent [p]laintiff from walking over the hole. Moreover, the hole is of such a small size that it is unlikely that a driver of a vehicle would even know they had driven over a hole in the street, let alone cause them to report it to [Kearny]. Unlike in Lodato, where the hole existed for eighteen years, [here] the hole existed for only six years. This is not such an extended period of time so as to create a reasonable inference that Kearny would have known of it, especially considering its small size. Accordingly, this Court is satisfied that no reasonable jury could conclude that Kearny had constructive notice of the dangerous condition because there is no evidence to suggest that the hole existed for an extended length of time and was "open and obvious" to the point that Kearny should have been aware of it.

The initial question before us, given that all inferences go to the non-moving party, is whether there is sufficient evidence in the record to create a question of fact on constructive notice.

In its analysis, the trial court weighed the evidence and found the pothole was not "obvious" under N.J.S.A. 59:4-3. The court found the pothole to be of such a "small size that it is unlikely that a driver of a vehicle would even know they had driven over a hole in the street . . . ." Next, the court found that the pothole had existed for six years but determined that time period insufficient to find that Kearny, in the exercise of due care, should have discovered it. The court noted in Lodato that the dangerous condition existed for eighteen years and simply concluded, without more, that six years was not long enough to find constructive notice. We do not agree with the trial court's analysis, which does not give all inferences to the non-moving party and substitutes its judgment for the jury on the constructive notice question.

In our view, the ample record yields a different outcome. Imagery from 2012 and 2015 showed evidence of cracking and surface depressions at the accident site. By July 2018, images revealed the formation of a pothole. By October 2020, images showed continued pavement deterioration and evidence of "large pothole formation." During this entire period, Kearny public works

13

employees, its Town Administrator, and its municipal engineering firm engaged in a variety of roadway inspection, planning, project finance, construction and repair activities having to do with Kearny Avenue. The repair activities included cutting, filling and patching a roadway defect at a manhole cover immediately adjacent to the developing pothole, and a trench cut and repair to the south of the developing pothole. Both of these events took place between 2018 and 2019. Plaintiff's expert opined, among other things, that the accident site was a "hazardous" condition which had deteriorated and become progressively worse over an eight-year period. Giving all inferences to plaintiff, we conclude that there is ample evidence in the record for a jury to conclude that: the Kearny Avenue pothole was a dangerous condition sometime after 2015; the dangerous condition had existed for a significant period of time prior to the accident; and the dangerous condition was obvious, so much so that Kearney, using due care, should have discovered it.

We turn to the second question in the N.J.S.A. 59:4-2(b) analysis. Was Kearny's failure to protect against this dangerous condition palpably unreasonable?

The Supreme Court notes,

> [t]he term "palpably unreasonable" – as used in N.J.S.A. 59:4-2 – "implies behavior that is patently

14

unacceptable under any given circumstance." When a public entity acts in a palpably unreasonable manner, it should be "obvious that no prudent person would approve of its course of action or inaction." The duty to refrain from palpably unreasonable conduct differs in degree from the ordinary duty of care that is owed under the negligence standard.

[Polzo v. Cty. of Essex, 209 N.J. 51, 75-76 (2012) (quoting Muhammad v. N.J. Transit, 176 N.J. 185, 195-96 (2003)) (citing Kolitch v. Lindedahl, 100 N.J. 485, 493 (1985))].

Palpable unreasonableness is a question of fact. Est. of Massi v. Barr, 479 N.J. Super. 144, 160 (App. Div. 2024) (citing Vincitore v. Sports & Exposition Auth., 169 N.J. 119, 130 (2001)). For purposes of summary judgment, the question becomes: giving all inferences to the non-moving party, was Kearny's failure to temporarily patch or repair the pothole palpably unreasonable? We conclude that a jury could make such a finding, given: (1) the record of deterioration at the site; (2) the host of town officials, workers, and professionals charged with monitoring Kearny Ave to plan and execute maintenance, repair, and roadway improvement strategies; and (3) Kimiecik's expert opinion which incorporates the record evidence and supports plaintiff's proofs on constructive notice and palpable unreasonableness.

Polzo v. County of Essex is easily distinguishable. In Polzo, the Court granted summary judgment for Essex County regarding a one-half inch deep

15                                                           A-2537-23

depression on a road shoulder that caused a fatal cycling accident, finding that the County's failure to repair was not palpably unreasonable and that the County lacked constructive notice of the dangerous condition. Id. at 78. The Court emphasized that "in view of the County's considerable responsibility for road maintenance in a world of limited public resources, the depression here, barely one-and-one-half inches in depth on the roadway's shoulder, might not have been deemed a high priority, even if the County were on notice of its presence." Id. at 77-78.

In contrast, the record before us shows a continually deteriorating pothole near the middle of the roadway in the Kearny central business district, a pothole whose outer dimensions were four feet by one foot, with a maximum depth of two inches. Unlike Polzo, this substantially larger defect manifested in a heavily traveled portion of the roadway where the Town had opportunities for discovery through multiple activities including, but not limited to, regular maintenance, street sweeping four times weekly, and specific road opening and repair assignments near the accident location before plaintiff's fall.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-2537-23